### ORDERS AFFECTING THE CUSTODY OF CHILDREN APPEALABLE.

Court of Appeals for Lorain County.

BENJAMIN F. VARSEY v. LILLIAN VARSEY.

Decided, March 20, 1916.

*Appeal—May be Had in a Divorce Proceeding—From an Order Affecting the Custody of Minor Children—Exception Contained in Section 12002 Enlarged under the New Constitution.*

Jurisdiction as to the custody of children is inherently equitable in its nature, and is given to the court of appeals under the section of the Constitution establishing that court; and it follows that appeal lies from an order in a divorce proceeding affecting the custody of minor children, notwithstanding the contrary provision of Section 12002, General Code.

*C. G. Washburn,* for plaintiff.
*David Perris* and *Wm. G. Stuber,* contra.

CARPENTER, J.

The defendant has appealed this case to this court so far as the decree of the court of common pleas relates to the custody of Russell Albert Varsey, minor child of plaintiff and defendant.

The question before this court arises out of the motion of the plaintiff to dismiss the appeal, for the reason that this court has no jurisdiction to entertain the same, by reason of its not being appealable under the provision of Article IV, Section 6, of the Constitution, establishing the court of appeals.

It is provided therein that courts of appeals have appellate jurisdiction in the trial of chancery cases. It will be observed that Section 12002, General Code, provides that no appeal will be allowed from a judgment or order of the common pleas court in a divorce case, except from an order dismissing the petition without final hearing, or from a final order or judgment granting or refusing alimony, or where an injunction has been granted under Section 12001.

Section 8033 provides:

"Upon hearing the testimony of either or both of such parents, * * * the court shall decide which one of them shall have the care, custody and control of such offspring."

Section 8035 provides:

"An appeal to a higher court may be had upon appellant giving bond * * * ."

In the case of *Bower* v. *Bower*, 90 Ohio St., 172, the syllabus reads as follows:

"An appeal will lie from a judgment or order of a court for the care, custody and maintenance of minor children regardless of whether such order is made in an action for divorce, divorce and alimony or alimony only, or in proceedings under the provisions of Section 8032, General Code."

Notwithstanding the court in the foregoing case bases the right of appeal upon statutory grounds, yet it is somewhat suggestive of the legal characterism pertaining to the custody of children by the courts. In the case of *Rogers* v. *Rogers*, 51

Ohio St., 1, Judge Spear in his opinion speaks of the authority
of a court over the matter of custody of children in divorce pro-
ceedings as probably being inherent, but it is given by the
divorce statute.  And the court in the memorandum opinion in
the Bowers case speaks of jurisdiction in such matters as being
"incident to the suit."  If this right adhered to the court by
reason of being an inherent right, is it not quite suggestive that
the statute was a mere codification of that right?

It does not follow that where a class of cases is within the
jurisdiction of chancery, that jurisdiction in chancery is taken
away because courts of law subsequently give a remedy.  *Cram*
v. *Green,* 6 Ohio, 429.  Accordingly, our Supreme Court has
held that notwithstanding partition proceedings are regulated
by statute in Ohio, yet they are inherently chancery cases,
having been so classed by the courts of England, and are there-
fore appealable to the courts of appeals.

In the case of *Sullivan* v. *Thomas,* 3 S. C., 531, the court in
its syllabus says:

"By the term, cases in chancery, as used in Article IV, Section
4 of the Constitution, declaring the jurisdiction of the Supreme
Court, is meant such cases as were cognizable by the courts of
equity of the state existing at the time of the adoption of the
Constitution."

In the opinion the court says:

"It must be premised that the jurisdiction of this court, so
far as it was ascertained and fixed by the Constitution is un-
affected by the provision of the code of procedure or any other
statutory law.  Again, the terms employed to mark out that
jurisdiction must be taken in the sense in which they were un-
derstood at the time the Constitution was adopted.  Thus, for
instance, the term 'cases in chancery' at the time, meant cases
of a class of which the court of chancery could entertain juris-
diction although since that time the court of chancery has been
abolished and its jurisdiction conferred upon the court of com-
mon pleas.  Yet, what was intended to be described as 'cases in
chancery' must be determined now, not with reference to the
present statute of jurisdiction and forms of procedure, but by
the inquiry whether any given case could have been regarded,

at the adoption of the Constitution, as a 'case of chancery.' When the nature of the right in controversy, or of the relief sought in any case is such that, prior to the code, it would have been appropriately pursued in the court of chancery, it will be regarded as within the expression 'cases of chancery.'

"The circumstance that forms of proceedings, as it regards law and equity, are assimulated under the code, does not affect the jurisdiction of the court as established under the Constitution; but we look to the substantial character of the controversy before us for the purpose of ascertaining the extent of the powers in relation to such case, rather than to the nature of the court from which the case comes or the technical mould in which the case is cast."

That divorce and alimony cases were not recognizable in the court of chancery in England, is verified by the following excerpt from the opinion in the case of *DeWitt* v. *DeWitt*, 67 Ohio St., 340, 344:

"We gather from a somewhat extended examination of authorities that, in so far as we derive any common law rules respecting divorce and alimony from the mother country, we inherited those administered in the ecclesiastical courts, for, outside of parliament, no other tribunal had or assumed cognizance of such controversies. Such power did not, in England, belong to a court of equity. The ecclesiastical court was not, and never had been, a court of equity. It was a canonical court, and never deviated from the canon law. * * * 'The court for divorce and matrimonial causes owes its jurisdiction—in part original and in part derived from ecclesiastical courts—to the act of parliament by which it was created, and the several amending acts by which that jurisdiction has been in various ways altered and amplified.' * * * It may be fairly claimed, from the foregoing, that the courts of Ohio have not general equity jurisdiction in suits for alimony, but that the jurisdiction is such, and such only, as is given by the statute." * * *

It will be noticed that in the entire opinion no mention is made regarding the custody of children, and it is quite suggestive that the Legislature deemed it proper to enact a separate statute, as it were, to avoid confusion in the administration of justice. Having demonstrated by authority that divorce and

alimony were not matters in chancery, it yet remains to determine whether the custody of children was in fact recognizable in courts of chancery. That that was so we find in 9 Eng. & Am. Enc. Law, 866:

"The ecclesiastical courts had no power to determine the custody of the children, as at common law the court of chancery has jurisdiction in such cases. Where jurisdiction to grant divorce is conferred upon a common-law court, such court will have only such powers as to the custody of the children as are conferred by the divorce statute. But where the jurisdiction is conferred upon a chancery court it will have full power to fix the custody of the children, aside from the special provisions of the statute.

"On granting a divorce it is the duty of the court to protect the interest of the state by providing for the custody and support of the children, and this may be done although neither party has prayed for such relief.

"The statutes in the various states of the United States and in England give the courts power to provide for the custody and maintenance of the children of the parties pending the suit for divorce.

"Courts having chancery jurisdiction may make such orders by virtue of the general jurisdiction in equity although the statutes are silent as to such remedy or merely provide that the custody may be awarded after a divorce is granted."

Again in the case of *In re Morgan,* 117 Mo., 249:

"Divorce and alimony, part of this jurisdiction, belonged to the ecclesiastical courts in former times in England, and the power to make awards as to the custody of children is a part of the ancient chancery jurisdiction."

Counsel for plaintiff has not referred us to any decision contrary to the foregoing, and knowing his accustomed diligence in preparation of cases, we may infer that there are none.

For the foregoing reasons, and upon the authorities cited, we hold that the custody of children is inherently equitable in its nature, having such characteristics and cognizable in a court of chancery, all of which, we think, brings it within the com-

prehension of the clause ''Cases in Chancery'' in Article IV, Section 6 of the Constitution of this state.

The motion of the plaintiff is therefore overruled.

MEALS, J., and GRANT, J., concur.